JANVIER, Judge.
As the result of an intersectional collision of two automobiles a third car, which was standing at the curb nearby, was struck by one of the cars which had been in collision and was severely damaged. The owners of the damaged car brought this suit against the operators of the two colliding cars and against the liability insurance carrier of one of them, the other having no liability insurance coverage.
It is charged that both drivers were negligent particularly in that each was operating his vehicle at too high a rate of speed and without regard to the possibility that .'he other might be about to enter the intersection.
There was judgment by default against the driver who had no insurance and, after a trial, there was judgment in favor of the other driver and his insurer and the suit of plaintiffs as to them was dismissed. The plaintiffs have appealed from that judgment.
The collision occurred at 10:15 o’clock P.M. on December 17, 1955, at the corner of Jeannette Street and Broadway, in the City of New Orleans. Though it was not raining at the time, the streets were wet. Jeannette Street is rather narrow, being 22 feet in width from curb to curb. It crosses Broadway at a right angle. Broadway is a two-driveway thoroughfare, each roadway being 22 feet in width and there being an eight foot wide neutral ground which separates the roadways.
One of the defendants, Kelly Crumedy, against whom judgment was rendered by default, was operating his car on Jeannette Street going in a downtown direction, and the other driver, Nathan J. Prince, was driving his car on the lower side of Broadway, going in the direction away from the Mississippi River. Crumedy’s car entered and crossed the upper roadway of Broadway and also the width of the neutral ground and then crashed into the side of the Prince car which was being driven about a foot or two from the edge of the neutral ground.
The Crumedy car, after striking the Prince car continued across the remaining portion of Broadway, mounted the curb, struck a light post on the sidewalk, and came to rest with all but its rear wheels on the lawn of the residence on the corner on the lower side of Broadway.
The Prince car, apparently out of control, struck the car of plaintiffs and, after striking another car which was also parked at the curb on Broadway, continued for an additional distance of 20 or 25 feet. It then skidded until it almost entirely reversed its direction, and came to rest in the roadway of Broadway some 70 or 80 feet from the point of original impact. Prince was knocked or thrown from his car to the ground and was unconscious for several hours. Although Crumedy made no defense in his own behalf, he was called as a *627 witness when the case came to trial against Prince and Prince’s insurer. He stated that, as he approached Broadway, there was a traffic stop sign to his right on the sidewalk, but that he did not notice it and did not stop before entering the intersection. He said that he was not familiar with the locality and did not know that he was about to enter Broadway though he did notice that it was a “two lane street.” He said that before entering he looked to his right and saw the Prince car which was about 50 to 75 feet from the intersection.
Prince did not see the Crumedy car at all, and it is this failure on his part to which counsel for plaintiffs points as evidencing negligence on his part. It is argued that he should have seen the Crume-dy car about to enter the intersection, and it is also argued that the speed of his car is indicated by the fact that it continued for a distance of some 70 or 80 feet, struck two cars, and then came to rest after almost completely reversing its direction.
Prince says that just before the accident he had been traveling at a speed of between 25 and 32 miles an hour. Counsel for plaintiffs argues that if he was driving his car at 32 miles an hour, he was violating the City Ordinance which, at that time, was in force and which according to counsel, limited speed to 30 miles an hour. However according to section 49, paragraph (b), C.C.S. 18,202, the speed limit was 35 miles per hour since Broadway is a boulevard. According to section 13, paragraph (a), a boulevard is “a street with a neutral ground or parkway and a roadway on each side thereof.”
Except for the behavior of the Prince car after the impact there is nothing to indicate that its speed was excessive and the action of the car after the impact is explained by the fact that Prince was knocked unconscious and completely lost control of the car. He himself says that, after the impact, he remembers nothing until he regained consciousness about four hours later, and Mr. L; T. Kuhner, one of the plaintiffs, said that when he came out of the residence in front of which his car had been parked and saw the Prince car, Prince had already fallen out to the ground and “that he wasn’t conscious.” He added: “In fact, from the blood on his face I didn’t know whether he was dead or not.”
Our conclusion is that, as Prince was driving his car along a boulevard at a moderate speed, Crumedy’s car unexpectedly crossed the roadway and crashed into the side of the Prince car and that Prince was not at fault in not noticing that the Crumedy car had not stopped as it should have done before entering the intersection. The Crumedy car was proceeding at a speed of possibly 20 miles an hour so that it was traversing about 30 feet a second. It thus required only about 2 seconds to move from the stop sign to the point of impact.
Counsel for plaintiffs cites several cases in which it was held that the operator of a car on a boulevard and having- the right of way may not blindly enter an intersection in the face of obvious danger. On the other hand, counsel for the defendants cite several cases in which it has been decided that an ordinarily prudent driver is not required to slow down at each intersection and to attempt to look in both directions up side streets to ascertain whether some other vehicle is about to enter.
After discussing the two different points of view we have just mentioned, the Court of Appeal for the First Circuit, in Gautreaux v. Southern Farm Bureau Casualty Company, 83 So.2d 667, 669, reached the conclusion that the driver of the car on the boulevard is not required to peer carefully into each direction on reaching each corner. The Court said:
“In the everyday world, ordinarily prudent motorists on the main thoroughfare do not slow before each corner and attempt to peer down the sidestreets, but instead concentrate most of their attention on the path *628 ahead, relying on their legal ‘right of way’. Legislative provisions for right of way are to facilitate the passage of traffic in this congested twentieth century world. If to accomplish this purpose, and in realization that even observing the path ahead may tax the ordinary motorists’ powers of sustained observation, the legislature has relieved the motorist on the right of way street of a duty ordinarily to slow before each intersection (and, consequently, of a duty to take his attention from the path ahead by darting glances each way down the intersecting streets), appellate courts should not supply artificial standards in an unrealistic attempt to allocate damages after an accident has occurred.”
Under all the circumstances we find no fault in Prince. Had he seen the Crumedy car he would have been justified in assuming that he would stop at the neutral ground and permit his car to pass.
Accordingly, the judgment appealed from is affirmed at the cost of appellants.
Affirmed.